**FALCON ENTERPRISES, INC., Appellant,**

**v.**

**PRECISE FORMS, INC., et al.,
Respondents.**

**No. KCD 26394.**

Missouri Court of Appeals,
Kansas City District.

April 1, 1974.

Rehearing Denied May 6, 1974.

Patrick R. Faltico, Paul Margolis, Jr., Kansas City, for appellant.

William B. Teasdale, Jack Z. Krigel, Kansas City, for respondents.

Before DIXON, C. J., and SHANGLER and WASSERSTROM, JJ.

WASSERSTROM, Judge.

Plaintiff, the appellant here, sued to recover the value of two signs located on leased premises which it alleged were misappropriated by the defendants after a default in the payment of rent. Four of the defendant, Mr. and Mrs. Trimmer and Mr. and Mrs. McKinley, as owners of the real estate, counterclaimed for the amount of unpaid rent, unpaid utilities, damages to the premises and the removal of certain equipment. Plaintiff in due time filed a reply to this counterclaim.

The case was set for trial on July 3, 1972, and the defendants appeared in court on that date. However, no appearance was made by plaintiff. Defendants proceeded to introduce evidence, and the court entered judgment for the full amount claimed by the Trimmers and McKinleys in the sum of $4,590.

Four days later, on July 7, 1972, plaintiff filed a Motion to Set Aside Judgment. In support of that motion, plaintiff set forth that depositions, including that of Mr. Patrick R. Faltico, had been set for June 28,

1972, just a few days before the trial date. The motion further stated that Mr. Faltico, one of the officers of the plaintiff corporation and also its attorney, was ill on that date and that Mrs. Faltico called the court reporter to arrange for a resetting of the deposition. An affidavit of Mrs. Faltico attached to the motion stated that she further advised the reporter that Mr. Faltico would be willing to agree to a continuance of the case in the event that the deposition could not be rescheduled before the trial date of July 3.

The motion also set forth that on June 29, Mr. Faltico was served with a notice to take his deposition on July 5, 1972. Mr. Faltico stated in the motion that he understood this notice to reflect an agreement by the defendants' attorney to reset the case for trial at some date subsequent to the taking of his deposition. Mr. Faltico further stated in the motion that he received no further word concerning the trial setting until he called defendants' lawyer on July 5, 1972, to say he would be a few minutes late for the deposition, at which time he was informed that judgment had already been entered two days earlier.

This motion by plaintiff was taken under advisement and was overruled by the court. Thereafter, plaintiff filed a Motion for Rehearing, supported by voluminous affidavits, and that motion was also overruled.

Plaintiff assigns two points of error on this appeal: 1) that the counterclaim should have been dismissed for failure to state a claim upon which relief could be granted; and 2) that the judgment should have been set aside because of irregularity and mistake.

I.

■ If the after-trial proceedings instituted by plaintiff were, in fact, one to set aside the judgment for "irregularity" under § 511.250 RSMo 1969, V.A.M.S. and Rule 74.32, V.A.M.R., as indicated by the name attached by plaintiff to its motion and terminology employed therein, then plaintiff's first point could not be considered. This is for the reason that the failure of a pleading to state facts upon which relief can be granted is not an "irregularity" within the meaning of this type of proceeding. State ex rel. v. Tate, 109 Mo. 265, 18 S.W. 1088 (1892); Casper v. Lee, 362 Mo. 927, 245 S.W.2d 132 (banc 1952).

■ However, the name given by a party to his after-trial motion is not controlling. Under facts very similar to those here, the court in Hamm. v. Hamm, 437 S. W.2d 449, l.c. 452–453 (Mo.App.1969), treated the motion and proceedings as one for a new trial.[1] So treating the motion, it was filed within time, and the appeal herein must be considered as an ordinary direct appeal from the judgment itself. Even though the motion in the trial court did not raise any point concerning the sufficiency of the counterclaim to state a cause of action, nevertheless, this question is not waived by failure to properly preserve it in the trial court and it may be raised for the first time on appeal. Harding v. State Farm Mutual Automobile Insurance Co., 448 S.W.2d 5 (Mo.banc 1969).

■ Plaintiff contends that the counterclaim failed to state a cause of action basically because it did not set forth sufficient facts to tie plaintiff into the lease and to show any responsibility on its part for performance of the lease obligations. The facts alleged by the counterclaim are that the premises were originally leased by Charles T. and Cecilia Heaton to Kansas City Beef No. 1, Inc.; that the lease was thereafter assigned to Steakland, Inc.; that thereafter the Heatons sold the real estate to the Trimmers and McKinleys; that Kansas City Beef No. 2, Inc. and Steakland, Inc. had their charters forfeited on January 1, 1969, and January 1, 1971,

---

1. It is of some interest that in its notice of appeal to this court, plaintiff changed its char-acterization of the after-trial motion to that of "Motion for new trial."

respectively;[2] and that Patrick R. Faltico was registered agent for the first of those companies and he was an officer and director of the other two. The pleadings as a whole show that the lease became in default sometime prior to January, 1971. The counterclaim further alleges that the rent default, as well as default in payment of utilities, were the acts of all of the three named corporations and certain named individuals "jointly and severally." The counterclaim further alleges that all these parties jointly and severally did designated damage to the premises and also "removed from the premises one (1) furnace and returned a furnace similar to the one removed, necessitating installation of an overhead blower type furnace with new wiring; removed another furnace from the premises; removed one (1) 5-ton central air conditioner which was bolted to the floor and hooked to a water tower; snipped wires on flourescent light fixtures, necessitating rewiring and reinstallation of said light fixtures; * * * disconnected a water heater, necessitating reinstallation; * * * left on the premises trash and debris which had to be hauled away; * * * left holes in the wall which had to be repaired and repainted; * * * ".

Plaintiff contends that these allegations fail to allege any attornment by any tenant to the Trimmers and McKinleys subsequent to their purchase of the premises from the original landlord; fail to allege any assignment of the lease to or any assumption of lease obligations by the plaintiff; and fail to allege any agency or successorship by plaintiff to either the original tenant (Kansas City Beef No. 2, Inc.) or its assignee (Steakland, Inc.). Plaintiff's argument proceeds that absent these allegations, there is no basis upon which to hold this plaintiff liable for any breach of the lease obligations.

It is unnecessary to decide whether that argument is sound, for the reason that the counterclaim seeks damages for acts which are wrongful and actionable wholly independent of any lease obligation. Whether or not plaintiff had assumed any of the duties of a lessee, it does have responsibility for going upon defendants' premises and disconnecting and tearing out equipment. This is liability for which even a complete stranger can be held liable in damages.

It is no answer for plaintiff to argue that the counterclaim is defective because it asks in part for recovery of defaulted rentals. It must be remembered that this case comes here without preservation of any claim of error concerning sufficiency of the evidence or the propriety of specific items of damage. As a matter of fact, no error is even assigned in those respects in plaintiff's Points Relied Upon in its brief filed in this court. Plaintiff is therefore relegated to the narrow question of whether there are enough allegations in the counterclaim to make out a cause of action of any sort, to the extent of any damages whatever. In this respect, the counterclaim is sufficient.

 Nor may plaintiff prevail upon its argument that the counterclaim fails to allege that the items of equipment mentioned in the counterclaim were fixtures belonging to the real estate, as contrasted to trade fixtures which would be the property of the tenant. The only reasonable intendment of the counterclaim is that the defendants Trimmers and McKinleys were claiming the equipment in question as fixtures belonging to them. These allegations therefore meet the criteria specified in Barber v. Allright Kansas City, Inc., 472 S.W.2d 42, l.c. 44 (Mo.App.1971), that a pleading in order to be sufficient need only advise the adverse party with reasonable

2. The date stated in the counterclaim for the forfeiture of the Steakland, Inc. charter is January 1, 1961, but that is quite obviously a typographical error.

certainty as to the cause of action it is called upon to meet and bar another action for the same subject matter. Furthermore, this argument by plaintiff is inconsistent with the allegation in the counterclaim that plaintiff disconnected certain pieces of equipment although leaving that equipment in place, thereby evidencing that plaintiff made no claim of ownership thereto.

The counterclaim is sufficient to withstand the complaint that it fails to state facts upon which relief can be granted.

## II.

Plaintiff's second point of alleged error is that the judgment entered on July 3, 1972, should have been set aside because of irregularity and mistake. Although plaintiff uses the term "irregularity", the entire thrust of its argument is that it did not appear on the date set for trial because of a mistake that the case had been set over, induced by the fact that defendants' counsel had sent notice of deposition to be taken on July 5.

One of the classical grounds for setting aside a judgment is excusable mistake on the part of a party who did not appear at the trial. However, in order for a mistake to qualify for this purpose, the mistake must be free of any admixture of negligence on the part of the party seeking relief. As stated in Hamm v. Hamm, 437 S.W.2d 449, l.c. 454 (Mo.App.1969), relief is not available unless the mistake "occurred free of his negligence and could not have been averted through the exercise of ordinary prudence". The key question to be answered on this branch of the case therefore is whether plaintiff and its counsel did exercise ordinary prudence in the situation presented.

Plaintiff's effort to justify its failure to appear in court on July 3 rests upon the evidence of Mr. and Mrs. Faltico concerning what happened on June 28. Their version of what happened is that Mrs. Faltico called the court reporter to advise of Mr. Faltico's illness and in the course of that conversation she further advised the reporter that if there was not sufficient time to reset the deposition, then Mr. Faltico was agreeable to a postponement of the trial setting. This version of events by the Falticos does not go without contradiction. At the court hearing on July 3, defendants introduced in evidence a letter dated June 29, 1972, from the court reporter with whom Mrs. Faltico had her conversation on June 28, and in that letter Martha Harris, on behalf of Myron Dupey & Associates, wrote to defendants' attorney that the information conveyed in the telephone call was that "Mr. Faltico was ill and would not be able to appear for the deposition but would call you in a day or two regarding setting the deposition again." If Harris' version of the conversation be accepted, then very obviously Mr. Faltico did not use due diligence in even the most liberal interpretation of that concept and in fact failed to keep his own commitment to take the initiative in getting in touch with defendants' counsel further.

But even if the Falticos' version of the conversation be accepted, even so, Mr. Faltico failed to exercise ordinary prudence. He had no right to draw an unsupported inference that defendants' attorney had impliedly agreed to a continuance of the case, when all he had to do was to make a simple telephone call to verify whether such an assumption was true or false. The receipt by him of a notice to take depositions on July 5 did not necessarily signify an agreement by defendants' attorney to a continuance of the trial. It was entirely possible, as indeed defendants now argue, that the notice for depositions on July 5 was purely precautionary to cover the very likely possibility that plaintiff would file application for a continuance, in which event defendants wanted

to be in a position to proceed with a deposition at the earliest possible opportunity and then request a prompt trial resetting. Plaintiff's attorney was not entitled to make with impunity his own assumptions as to the intention underlying the notice for depositions on July 5, and he made those assumptions at his own risk and that of his client. His mistake under these circumstances must be attributed at least in part to his own fault, thereby defeating any right to set aside the judgment on this ground.

The situation here is clearly distinguishable from that in which a party is misled into not appearing at trial because of misrepresentations by his opponent. Cases of that sort are illustrated by Watkins v. Hubbard, 343 S.W.2d 189, l.c. 192 (Mo. App.1961), and cases there collected. In contrast, the defendants here made no promise that the case would be set over nor any representation that plaintiff need not appear. What is more, defendants concealed nothing from the court, but on the contrary, spread the whole matter on the court record, including a copy of the notice to take depositions on July 5, 1972, the key point upon which plaintiff now relies as constituting some sort of implied representation. Under the facts in this case, plaintiff's failure to appear was not due to any fault or misconduct by defendants, but rather was due to its own negligence.

Relief by way of setting aside a judgment rests very largely in the broad discretion of the trial court. Allen v. Fewel, 337 Mo. 955, 87 S.W.2d 142 (1935); 46 Am. Jur.2d, Judgments, § 682, page 832. The exercise of that discretion has not been abused by the trial court under the facts of this case and will, therefore, not be subjected to interference.

The judgment is affirmed.

All concur.